**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CARLA BALLOU, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSAL HEALTH SERVICES, INC.,<br>a foreign corporation,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff CARLA BALLOU ("**Ms. Ballou**" or "**Plaintiff**") by and through her attorneys, Jenny L. Foley, Ph.D., Esq. of HKM Employment Attorneys LLP, hereby complain and allege as follows:

### JURISDICTION

1. This is an action for damages brought by Plaintiff for unlawful workplace discrimination and retaliation based on race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and Nevada Revised Statute §613.330 et seq; for monetary damages to redress the deprivation of rights secured to the Plaintiff by the Civil Rights Act of 1871, 42 U.S.C. § 1981; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C.

Page **1** of **11**

§2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3. All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. On or about July 15, 2021, Plaintiff initiated the process of filing a Charge of Discrimination against her employer, the Defendant named in this action with the Nevada Equal Rights Commission wherein he alleged discrimination based on race, color, and retaliation.

5. On or about July 16, 2021, Plaintiff received her Notice of Right to Sue from the EEOC.

6. This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7. Plaintiff has exhausted her administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9. Plaintiff is a United States citizen and current resident of Clark County, Nevada.

10. Defendant UNIVERSAL HEALTH SERVICES, INC. (hereinafter "**UHS**" or "**Defendant**") is a foreign corporation and an employer in the State of Nevada.

11. At all times relevant to this matter, Defendant had over 50 employees, and is therefore subject to the provisions of Title VII.

12. Plaintiff is an African American female.

13. Plaintiff was over the age of 50 at the time of the incidents that gave rise to this action.

14. Plaintiff was an employee from approximately April 2019 through approximately September 28, 2020.

15. Plaintiff's final position for Defendant was as the Director of Revenue Cycle.

16. Plaintiff began working out of California, where she flew to Las Vegas, Nevada three times a week for work, and then flew back to California two times a week.

17. When Plaintiff was initially hired, she was informed that she would be required to relocate to Las Vegas, Nevada.

18. The move to Las Vegas was initially planned for February 2020, when the California office was set to close; however, that date got pushed back to May 31, 2020, when the office did close.

19. Plaintiff contacted UHS Human Resources was contacted twice regarding the move that Plaintiff was now expected to undergo with little warning.

20. UHS had admittedly failed to update the Senior VP, Mike Nelson, another white male.

21. Human Resources eventually instructed Plaintiff to write a summary explaining the situation and facts regarding the relocation and timeline.

22. After Plaintiff submitted the letter to Human Resources, she received a revised letter back that addressed the timelines and other issues regarding the move.

23. After two weeks, Plaintiff's supervisor, Peggy Stavitz, a white female, told Plaintiff that Defendant had to internally discuss what to do.

24. In or around June 2020, Mr. Nelson responded to Plaintiff inquiry and demanded that Plaintiff move to Nevada within 15 days.

25. Plaintiff did not believe that this was nearly enough notice to move to an entirely different state.

26. As such, Plaintiff contacted Human Resources for assistance in drafting an extension request.

27. Plaintiff's efforts were successful, and Defendant granted her an additional 60 days to move to Nevada, giving her until August 8, 2020, to move to Las Vegas.

28. During this time, Plaintiff also notified Defendant of a pre-existing condition that required certain accommodations, which were documented and approved.

29. Plaintiff provided documentation from her physicians that she had an asthma condition and that she needed to work at home or in a position involving no direct personal contact with others.

30. Following this, Plaintiff did not have any issues while working for Defendant until July 10, 2020, when she arrived for work and noticed that her computer had gone missing from her desk.

31. Accordingly, Plaintiff reported it to her supervisors and contacted the police who immediately began investigating the theft.

32. Upon information and belief, after the employees learned of the missing laptop, they searched to see if anything else had been taken, and it was determined that the Assistant Director's keys had also been taken.

33. Plaintiff learned that the IT Manager, Steve Zucker, a white male, was claiming that the laptop was still in the building at the same time Plaintiff was in the building. This amounted to a direct allegation that Plaintiff stole the laptop.

34. As a result of this allegation, the investigating police officer confronted Plaintiff with the allegation made by Mr. Zucker and proceeded to interrogate Plaintiff as if she were already found guilty of the theft.

35. No one intervened on Plaintiff's behalf to stop the unnecessarily harsh and accusatory interrogation by Plaintiff.

36. After the Assistant Director, Terre Churchill, reached out to corporate IT, it was discovered that Mr. Zucker was mistaken in his assessment.

37. Mr. Zucker's information indicated Plaintiff's laptop was in the building based on Eastern Time, instead of Pacific Time, which proved that Plaintiff was not in the building at the same time (Pacific Time Zone) as now the missing computer.

38. Plaintiff reported Mr. Zucker's allegation and the resulting behavior of the police officer to her supervisor, Ms. Stavitz.

39. Upon information and belief, Ms. Stavitz, told Plaintiff that the allegation and resulting behavior were not racist and that Plaintiff should just let them do their job.

40. Plaintiff also reported the incident to the Human Resource Director at Southwest Healthcare.

41. Thereafter, Plaintiff continued to correspond with Defendant regarding her move and accommodations.

42. On or about September 28, 2020, Plaintiff was terminated after her assistant had forwarded a check for approval to the corporate office.

43. Upon information and belief, the check was approved and came through correctly, and Plaintiff's assistant, Christina Johnson, sent in a W-9 that the bad actor had submitted to re-route the check, without the assistant's knowledge, which ultimately resulted in a hacker cashing a check for approximately $174,000.

44. Ms. Johnson, a white female, had been conversing with the owner of the company regarding the check that had not been properly processed.

45. Plaintiff was not privy to every email or communication regarding the investigation into the matter, but she knew that her assistant was looking into it.

46. At some point in her communications with the owner of the company to whom the check was written, Ms. Johnson informed Plaintiff that she was concerned that fraud had been committed.

47. Plaintiff requested that Ms. Johnson send her all of the emails and correspondence so that she could notify the IT team, her supervisor, and HR.

48. Thereafter, Plaintiff received several calls from Ms. Stavitz, Human Resources, as well as from the Senior VP, Michael Nelson, a white male.

49. Ms. Stavitz often led the calls and would ask Plaintiff if she remembered any additional information or whether anything else happened regarding the check fraud perpetrated by an unknown bad actor.

50. Plaintiff felt as if she was being harassed and accused of impropriety, especially considering that many other employees, including Ms. Johnson, were never interrogated in such an accusatory manner.

51. Upon information and belief, the Chief Information Officer, Tom McLoughlin,

stated that, based on the emails that were forwarded, an untrained eye would have never realized that the email between Ms. Johnson and the vendor was hacked as the email was only one letter off.

52. Plaintiff explained the situation and reiterated the facts several times to several people and departments, including the HR, Compliance, IT, and Legal departments.

53. After one such meeting, Ms. Stavitz had told Plaintiff that she had done very well and that her story was always complete with no holes.

54. Plaintiff's reply to the praise was that she had felt as if she was being targeted once again.

55. Ms. Stavitz's statement was a clear indication that the two events were, in fact, linked in her estimation.

56. Upon information and belief, on or about September 26, 2020, the entire UHS computer system was hacked.  Plaintiff was, and still is, unaware of the extent of the damage, if any, as a result of that hack, and she is unaware whether the check fraud incident was related to the September 26, 2020 hacking event.

57. On Monday, September 28, 2020, Ms. Stavitz showed up onsite, which was unusual given that she worked out of the corporate office in Philadelphia, and called Plaintiff into an office.

58. Ms. Stravitz terminated Plaintiff ostensibly because of the check that had been defrauded by a hacker, despite Plaintiff not being the primary handler of the check as well as the CIO stating that an untrained eye would have never realized that the email between Ms. Johnson and the vendor was hacked.

59. In addition, Plaintiff was not only unresponsible for the check incident, but it was her actions that allowed for the recovery of some of the money.

60. Plaintiff was the one who contacted the Regions Bank in Alabama for them to trace the check.

61. Yet, Plaintiff was, upon information and belief, the only individual who was being targeted.

62. In fact, Plaintiff's own assistant, a white female who typically handled these types of situations, was not subjected to any similar interrogation, discipline, or termination.

63. In summary, two 'theft' events occurred and during each, the only African American involved was interrogated, harassed, and treated as the perpetrator and in a hostile manner, when in fact, for both instances, Plaintiff was proven entirely innocent.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Race and in violation of State and Federal Statutes)**

64. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

65. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on race, disability, or a combination of both.

66. Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq., Title VII, 42 U.S.C. § 2000e et. seq. as amended and thus, has a legal obligation to provide Plaintiff with a work environment free from discrimination and harassment.

67. Defendant refused to take reasonably adequate steps to prevent discrimination against Plaintiff by knowingly allowing employees and law enforcement personnel to harass Plaintiff because of her race and by failing to address Plaintiff's complaints of racial discrimination.

68. Plaintiff endured a series of discriminatory acts carried out by Defendant, the chief examples being accused of stealing a computer, committing fraud, and then ultimately being terminated when there was no evidence to support Defendant's accusations.

69. Plaintiff first reported discriminatory conduct by the IT Manager, and Defendant not only failed to address the underlying issue, but Defendant compounded the injury by telling Plaintiff to just acquiesce to the racist behavior.

70. Plaintiff further reported the hostile environment several times after fraudulent check incident.

71. No other similarly situated persons, not of Plaintiff's protected class, were

subject to the same or substantially similar conduct.

72. Plaintiff suffered adverse economic impact due to Defendant's discriminatory behavior and termination.

73. Plaintiff was embarrassed, humiliated, angered and discouraged by the discriminatory actions taken against her.

74. Plaintiff suffered compensable emotional and physical harm, including but not limited to, headaches, sleeplessness, anxiety and depression resulting from this unlawful discrimination by her employer.

75. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

76. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional repeated violations of federal and state civil rights laws.

77. Plaintiff suffered damages in an amount deemed sufficient by the jury.

78. Plaintiff is entitled to an award of reasonable attorney's fees.

79. Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly and intentionally discriminated against Plaintiff because of her race and disability.

80. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## SECOND CAUSE OF ACTION

**(Retaliation under Federal Law, 42 U.S.C. § 2000e-3 and State Law, NRS 613.340)**

81. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

82. In violation of 42 U.S.C § 200e-3 and NRS 613.340, Defendant retaliated against Plaintiff after she complained of acts which he reasonably believed were discriminatory.

83. Plaintiff complained of race discrimination as well as retaliation to her

supervisors and Defendant's HR Department; but, Plaintiff was only met with more retaliation after making such complaints.

84. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

85. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

86. Plaintiff suffered damages in an amount deemed sufficient by the jury.

87. Plaintiff is entitled to an award of reasonable attorney's fees.

88. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff because he submitted a complaint of racial discrimination with the general manager.

89. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## THIRD CAUSE OF ACTION

### (Violation of the Civil Rights Act of 1871, §1981)

90. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

91. Plaintiff is African American and therefore a member of a protected class.

92. Defendant engaged in the above-mentioned harassment and discrimination of Plaintiff with the purposeful intent to discriminate against her because of her race (African American).

93. Under similar circumstances, other, white or non-African American employees were not subjected to a racially hostile working environment.

94. Plaintiff was subject to disparate treatment and retaliation through adverse employment actions, and favorable behavior toward white employees, which is prima facie evidence of purposeful intent to discriminate against Plaintiff because of her race.

95. Plaintiff suffered damages in an amount deemed sufficient by the jury.

96.    Plaintiff is entitled to an award of reasonable attorney's fees in this matter.

97.    Defendant is guilty of oppression, fraud or malice, express or implied as Defendant knowingly violated Plaintiff's rights under Section 1981 of the Civil Rights Act of 1871.

98.    Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## FOURTH CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

99.    Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

100.    Defendant's conduct toward Plaintiff was extreme, outrageous, and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

101.    Defendant's conduct was extreme, outrageous, and undertaken with either intent or, reckless disregard for causing Plaintiff emotional distress.

102.    Defendant had a duty to refrain from engaging in the hostile and retaliatory acts as described above.

103.    Defendant breached that duty.

104.    Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

105.    Defendant must pay damages in an amount to be determined at trial but exceeding $25,000 for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

106.    Because Defendant is guilty of oppression, fraud or malice, express or implied, Defendant must pay Plaintiff an additional amount for the sake of example and by way of punishment.

107.    Plaintiff has had to obtain the services of an attorney to protect her rights and

secure compensation for the damages incurred as a result of these violations and therefore, he is entitled to recover reasonable attorney's fees against Defendant.

**WHEREFORE,** Plaintiff prays this court for:

a. A jury trial on all appropriate claims;

moreover, to enter judgment in favor of the Plaintiff by:

b. Awarding Plaintiff an amount sufficient to fully compensate her (including tax consequences) for all economic losses of any kind, and otherwise make her whole in accordance with Title VII, §1981, and certain claims brought pursuant to the Nevada Revised Statutes;

c. General damages;

d. Special damages;

e. An award of compensatory and punitive damages to be determined at trial;

f. Pre- and post-judgment interest;

g. An award of attorney's fees and costs; and

h. Any other relief the court deems just and proper.

Dated this 11th Day of October, 2021.

                **HKM EMPLOYMENT ATTORNEYS, LLP**

                */s/ Jenny L. Foley*
                **JENNY L. FOLEY, Ph.D., Esq.**
                Nevada Bar No. 9017
                1785 East Sahara, Suite 300
                Las Vegas, Nevada 89104
                Tel: (702) 805-8340
                Fax: (702) 805-8340
                E-mail: jfoley@hkm.com
                *Attorney for Plaintiff*